(No. 12686.—Reversed and in part remanded.)

JOHN CURRAN, Appellee, *vs.* THE CHICAGO AND WESTERN INDIANA RAILROAD COMPANY *et al.* Appellants.

*Opinion filed June 18, 1919—Rehearing denied October 10, 1919.*

1. NEGLIGENCE—*whether there is evidence tending to support cause of action is question of law.* Whether there is any evidence in the record which fairly tends to support the cause of action is a question of law.

2. SAME—*when failure to comply with an ordinance imposes no liability.* A failure to comply with an ordinance is merely *prima facie* evidence of negligence and imposes no liability if such failure does not contribute to the injury complained of.

3. SAME—*when failure to fence tracks of railroad is not proximate cause of injury.* The failure of a railroad company to fence its tracks according to the terms of an ordinance cannot be the proximate cause of an injury to a person by a train on a parallel track belonging to another company which had also failed to fence its tracks, though such person, in order to reach the place where he was injured, had crossed the tracks of the first company.

4. SAME—*whether evidence tends to show that certain negligence was proximate cause of injury is question of law.* Whether there is any evidence fairly tending to show that the negligence charged was the proximate cause of the injury is a question of law which is raised by a motion for a directed verdict.

5. ORDINANCES—*when notice to fence railroad tracks is essential.* Under an ordinance requiring railroads to fence tracks when and where the city council shall direct, notice to a railroad company as to when and where to construct its fences is essential to its liability for failure to comply with the ordinance.

CARTER and STONE, JJ., dissenting.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUT-HILL, Judge, presiding.

C. G. AUSTIN, JR., and BEVERLY W. HOWE, for appellant the Chicago and Western Indiana Railroad Company.

Loesch, Scofield, Loesch & Richards, for appellants the Pennsylvania Company and the Pittsburgh, Fort Wayne and Chicago Railway Company.

Francis X. Busch, Charles S. Deneen, William W. McCallum, and Elmer M. Leesman, for appellee.

Mr. Justice Thompson delivered the opinion of the court:

This was an action on the case brought by the appellee, John Curran, a minor, by his guardians and next friends, in the circuit court of Cook county to recover damages against the Chicago and Western Indiana Railroad Company, (hereafter called for convenience the Western Indiana,) the Belt Railway Company, the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, the Pennsylvania Company, and the Pittsburgh, Fort Wayne and Chicago Railway Company, (the last two hereafter called for convenience the Pennsylvania Lines.) Damages were claimed for personal injuries sustained by appellee on April 15, 1915. The declaration contained four counts. The first charged, in substance, that appellants had failed to build fences alongside their tracks, in violation of certain ordinances therein set out, and that as a consequence thereof appellee, a boy fifteen years old, walked upon the tracks where people had been in the habit of crossing, and while in the exercise of due care and while standing beside a moving train was struck by some projection from one of the cars and thrown down under the wheels. The second count charged a failure to maintain sufficient fences, in violation of the same ordinances. The third count, which charged negligence in operating a train with some object projecting from its side, and the fourth count, which charged willful and wanton injury, were both dismissed by appellee. The case went to the jury on the first and second counts under pleas of not guilty of the Western Indiana

and the Pennsylvania Lines, the suit being dismissed by appellee as to the Belt Railway Company and the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. The jury returned a verdict against appellants, fixing damages at $30,000, upon which judgment was entered. The judgment was affirmed on appeal to the Appellate Court, and a certificate of importance having been granted by the Appellate Court, the appellants have prosecuted a further appeal to this court.

John Curran, a lad fourteen years and ten months old, lived on the day of the accident at 9721 Houston avenue, Chicago. Houston avenue runs north and south. One block east is Baltimore avenue. Running east and west and crossing Houston avenue at right angles are Ninety-sixth, Ninety-seventh and Ninety-eighth streets. To the east of Baltimore avenue about 200 feet, and running north and south parallel with the avenue, are the tracks of the Pennsylvania Lines. Immediately east of the tracks of the Pennsylvania Lines are the tracks of the Western Indiana. Ninety-sixth and Ninety-eighth streets continue east from their intersections with Houston avenue across Baltimore avenue and the tracks of appellants. Ninety-seventh street does not cross the tracks but ends at Baltimore avenue. It is paved and curbed to Baltimore avenue. Between Ninety-sixth and Ninety-eighth streets and Baltimore avenue and the tracks of appellants is an open, rectangular plot of ground grown up with weeds and tall slough grass. To the east of the tracks, between Ninety-sixth and Ninety-eighth streets, is another open tract extending to the Calumet river, also grown up with tall, coarse grass, except an acre fenced and occupied by Ira L. Wiggins, who lived on the south side of Ninety-sixth street, about a block east of the tracks and about two blocks west of the Calumet river. There was a path through the weeds on Ninety-seventh street extended, across the tracks to the Wiggins place. Wiggins raised poultry and truck, and people came

289 – 8

to his place by way of the path to get fowls, eggs and vegetables. Boys also crossed there by way of the path to go swimming. There was no fence whatever on either side of the Pennsylvania tracks, and, so far as the evidence shows, never had been. There was no evidence that there had ever been a fence on the west side of the Western Indiana tracks. On the east side was a line of old posts, but for years there had been no fence there. Who put the posts there does not appear. Tracks here ran through a low, open field, there being no buildings, trees or obstructions on either side of Ninety-seventh street extended, on either side of the tracks. Coarse grass on each side of the tracks was in the fall about as high as a man's head and a footpath was broken through this growth. At the time of this accident there was not much growth there. About 7:40 in the morning of April 15, 1915, appellee left his home to go to the Wiggins place on an errand for his mother. He walked north on Houston avenue to Ninety-seventh street and then turned east on Ninety-seventh street. As he approached Baltimore avenue he saw a long mixed freight train passing south. He continued east on Ninety-seventh street and crossed Baltimore avenue. He then continued east across the open tract along the path to the tracks. The train was still passing south on the third track, which was the west track of the Western Indiana. It was a train of the Belt Railway Company. Appellee walked across the two Pennsylvania tracks and then stood between the east Pennsylvania track and the west Western Indiana track, waiting for the train to pass. As he stood there, about two feet from the train, he turned, facing south, and exposed his left side to the train. Though there is some conflict in the evidence, it fairly tends to show that some object projecting from one of the cars struck appellee in the back of the head and knocked him forward. In some manner, in falling, his left arm got under the wheels and it was so crushed that it had to be amputated. Appellee immediately jumped up and ran home. Ap-

pellee had lived in this neighborhood for more than five years and was thoroughly familiar with all surroundings. He knew that Ninety-seventh street ended at Baltimore avenue. He knew there were no fences along the tracks. He knew that the Pennsylvania used the first two tracks and that the Western Indiana used the next three tracks. There were about six feet between the adjacent tracks of the two systems.

This case rests entirely upon the alleged negligence of the appellants in their failure to build and maintain fences in accordance with certain ordinances of the city of Chicago. Unless, therefore, the appellants were required to fence but neglected to do so, and such neglect to fence was the proximate cause of this injury to appellee, there can be no recovery.

Section 3 of an ordinance of the city of Chicago of March 26, 1890, provides: "Every person, firm, company or corporation owning, leasing or operating a steam railroad within the corporate limits of the city of Chicago, shall, within such time as may be prescribed by the mayor and commissioner of public works, construct or cause to be constructed on each side of its tracks, and in such place with reference thereto as the mayor and commissioner of public works shall approve or direct, except where public streets shall intersect or cross the same, substantial walls or fences of such material, design, proportion and height as shall be determined and approved by the mayor and commissioner of public works." Section 1994 of the revised municipal code of Chicago of 1905 provides: "Every person or corporation owning, leasing or operating a steam railroad within the city, shall, within such time as may be prescribed by the city council, construct or cause to be constructed on each side of its tracks, and in such place with reference thereto as the city council shall direct, except where public streets shall intersect or cross the same, substantial walls or fences of such material, design, proportion and height as shall be

determined and approved by the mayor and commissioner of public works." Section 2198 of the revised municipal code of Chicago of 1911 is identical with the last quoted section of the code of 1905.

Before there was an obligation to fence the tracks of appellants it must have been shown by competent evidence that appellants were notified by the city some time during the life of the ordinances and before April 15, 1915, when and where the fences were to be constructed along their tracks. There was offered in evidence as against the Western Indiana a letter-press copy of the following letters:

"*April 18, 1890.*

"*Benjamin Thomas, Esq., V. P., General Manager Chicago and Western Indiana Railroad:*

"DEAR SIR—In accordance with your request I enclose to you two copies, each, of general specifications as to the erection of fences, gates and so forth under ordinance lately passed, and the permit to proceed under the same, which was issued in connection therewith. These documents are to be signed according to the form prescribed in same and a copy retained by each party to the agreement.        "Yours truly,

W. H. PURDY, *Commissioner of Public Works.*"

"*January 8, 1891.*

"*Benjamin Thomas, Esq., Vice-President and General Manager Chicago and Western Indiana:*

"DEAR SIR—I consulted with his honor, the mayor, yesterday, in relation to the matter of fencing your tracks along a certain portion of Wallace street as per our interview of yesterday morning. It appears that even if the width of the sidewalk on the west side of Wallace street be established at four feet there will not be sufficient space for your fence, a public driveway and a sidewalk; and still the mayor and commissioner of public works have no power to authorize the construction of a fence which will render the driveway impassable, nor have we the right to release the Chicago and Western Indiana railroad from their obligation to fence their tracks. If you cannot throw your tracks over east so as to provide for a fence without encroaching upon the driveway, I would suggest that you present a brief statement of the facts in writing, to the city council and ask for such relief as may be possible. If you prefer to make such a statement to me I will transmit it to the council.        W. H. PURDY, *Commissioner of Public Works.*"

There was also offered a letter-press copy of a circular letter headed with initials of divers railroads, including initials "C. & W. I.," dated September 23, 1890, which follows:

"DEAR SIR—On July 28 the city council passed the following order: 'Ordered that the commissioner of public works require all companies or corporations operating lines of steam railroads within the boundaries of the city of Chicago to furnish a statement to what extent an ordinance recently passed by this council allowing or requiring such companies to enclose their rights of way, respectively, has been complied with; what streets such companies or corporations cross, and at which of said streets so crossed gates have been erected, and at which of said streets fences, if any, have been erected and the street crossings closed; by what right such crossings are closed and barred from public traffic. Said commissioner shall report such information to the next regular meeting of the council.' In accordance with the above order you will please communicate to this department, without delay, all information in detail which it calls for, as regards your company, and oblige,

"Yours truly,

W. H. PURDY, *Commissioner of Public Works.*"

· There was also offered in evidence a certain resolution of the city council of the city of Chicago dated June 29, 1891, which follows:

"Whereas, there is now in force an ordinance known as the 'Fast Train Ordinance,' passed by the city council, requiring all the railroads running trains inside the limits of this city to erect fences, gates, etc., and maintain watchmen at various crossings:

"*Resolved*, that the commissioner of public works be requested to report to this council, at its next regular meeting, the names of all railroads that have fully complied with the provisions of said ordinance, and if there are any railroads that have not fully complied with said ordinance, that the commissioner be requested to report if such roads are running any trains faster than the rate of ten miles an hour within the limits of said city of Chicago."

The above is all the evidence received to show that the Western Indiana had been notified, under the ordinances, when and where to erect fences along its tracks. There was no proof to what point these communications were addressed nor whether they were mailed nor that they ever reached the Western Indiana. There were no communica-

tions from the Western Indiana to the city or any of its officers. Granted that the communications were received, do they fairly and reasonably tend to show that the Western Indiana was ever notified to construct fences along its tracks at the point in question? Was there ever any action taken or reports made on the orders and resolutions of the city council? It appears from the evidence that there was never a fence on the west side of these tracks at the place where appellee went upon the right of way. The city council had permitted this track to remain unfenced for twenty-five years after the adoption of the ordinance of 1890. It would appear that the city council not having required a fence to be erected at this point regarded it as unnecessary. It will be noted that no business was carried on between the tracks and the Calumet river on either side of Ninety-seventh street extended. Giving this evidence the most favorable consideration, it cannot be said that the city council or anyone else directed the Chicago and Western Indiana Railroad to build a fence at the point in question. The weight of the evidence is never considered on review where the same has been passed on by the Appellate Court, but whether there is any evidence in the record which, taken with all its reasonable inferences, fairly tends to support the cause of action is a question of law for this court and may be considered on review. (*Babbitt* v. *Grand Trunk Western Railway Co.* 285 Ill. 267; *Jenkins* v. *LaSalle County Coal Co.* 264 id. 238; *Foster* v. *Wadsworth-Howland Co.* 168 id. 514.) It follows, therefore, that it was error to admit in evidence these ordinances against the Chicago and Western Indiana Railroad, and it was error not to instruct the jury to find the Chicago and Western Indiana Railroad not guilty under the first and second counts of the declaration.

There was considerable correspondence between the commissioner of public works and the Pennsylvania Lines. Considering this correspondence in the most favorable light

for the appellee and resolving all the intendments reasonably to be drawn therefrom in favor of the appellee, it may be said that the Pennsylvania Lines were brought within the ordinance. It then remains to be decided whether or not the neglect on the part of the Pennsylvania Lines to fence their tracks was the proximate cause of this injury.

A failure to comply with an ordinance is merely *prima facie* evidence of negligence. If the failure to comply with the ordinance does not cause or contribute to cause the injury complained of, such failure does not impose a liability. (*Gibson* v. *Leonard*, 143 Ill. 182.) After reviewing the authorities at great length we said in *Seith* v. *Commonwealth Electric Co.* 241 Ill. 252: "If the negligence does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the two are not concurrent and the existence of the condition is not the proximate cause of the injury." In the *Seith case, supra,* we further said, quoting Judge Cooley: "If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause and refuse to trace it to that which was more remote." And further quoting Wharton on Negligence: "Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent, responsible human action." This case is quoted with approval in *Jenkins* v. *LaSalle County Coal Co. supra.*

If the absence of a fence along the tracks of a railroad can be the proximate cause of an injury, it can only be the

absence of a fence along the tracks of the road on which the injury occurred and not the absence of a fence along parallel tracks belonging to other roads. The duty to fence, imposed by law upon a parallel railroad, cannot be made to depend upon the observance or non-observance of the legal duty resting on the Pennsylvania Lines. (*Illinois Central Railroad Co.* v. *Davidson,* 225 Ill. 618; *Kelver* v. *New York, Chicago and St. Louis Railroad Co.* 126 N. Y. 365; *Frisch* v. *Chicago Great Western Railway Co.* 95 Minn. 398.) Under this ordinance each railroad to which it is made to apply is required to fence its own tracks. The duties of the Pennsylvania Lines were in relation to the dangers upon its own right of way. The duty to exclude persons from the right of way of an adjoining railroad with parallel tracks was certainly not upon the Pennsylvania Lines. Whether there is any evidence fairly tending to show the negligence charged was the proximate cause of the injury is a question of law which is raised by the motion for a directed verdict. (*Jenkins* v. *LaSalle County Coal Co. supra; Seymour* v. *Union Stock Yards Co.* 224 Ill. 579.) Conceding that the negligent act of the Pennsylvania Lines in not erecting a fence at the point in question created a condition which made the injury possible, the injury could not have occurred but for the independent act of the Belt Line train. That act was an independent cause of the injury by one for whose act the Pennsylvania Lines was not responsible and by one over whom it had no control. It follows that the Pennsylvania Company and the Pittsburgh, Fort Wayne and Chicago Railway Company were not liable for such act, and the negligence alleged against them in the first and second counts of the declaration was not the proximate cause of the injury. The circuit court ought therefore to have given the instruction directing a verdict of not guilty as to the Pennsylvania Company and the Pittsburgh, Fort Wayne and Chicago Railway Company.

Many other questions are raised by this record, but as it is not necessary to pass upon them in the decision of this case it would unnecessarily lengthen this opinion to discuss them.

For the errors hereinbefore pointed out, the judgment is reversed as to the Pennsylvania Company and the Pittsburgh, Fort Wayne and Chicago Railway Company, and the judgment is reversed and the cause remanded as to the Chicago and Western Indiana Railway Company.

*Reversed and in part remanded.*

CARTER and STONE, JJ., dissenting.