Hollingshead Motors Company, Appellant, v. James L. Crogan, Trading as Ridgeland Garage, Appellee.

Gen. No. 44,426.

424

Opinion filed February 9, 1949.   Released for publication March 9, 1949.

QERREY & HARROW, of Chicago, for appellant; JOSEPH HARROW and JOHN T. KENNEDY, both of Chicago, of counsel.

EUGENE P. KEALY, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Hollingshead Motors Company filed a statement of claim in the municipal court of Chicago against James L. Crogan, doing business as Ridgeland Garage, for damages to plaintiff's automobile of which defendant was bailee. A trial before the court and a jury resulted in a verdict for the defendant. The court overruled plaintiff's motions for judgment notwithstanding the verdict and for a new trial and entered judgment on the verdict. Plaintiff appealed.

The defendant, residing at 7300 Blackstone avenue, Chicago, operated a garage located at 1747 East 71st street, Chicago. The garage was on the south side of the street. It was a one story brick building with a frontage of 100 feet, a depth of 175 or 180 feet, and would accommodate about 80 cars. There were two doors in front and one in back of the garage. There was an alley in the back. The garage was heated by

steam by a coal-burning boiler in the basement, which boiler was under the southwest corner of the building. The cars in the garage were parked headed west on the east wall. In the middle of the garage the cars were parked back to back and on the west wall they were parked headed east. They were parked so that there were two aisles in the garage. There was a turn around door at the back.

Plaintiff was the owner of a 1941 Oldsmobile sedan automobile, which he delivered to defendant for overnight storage in the garage for a consideration on the night of Saturday, January 12, 1946. Plaintiff's car was parked in the very front of the garage near the office at the northeast corner of the building. On the morning of Sunday, January 13, 1946, there was a fire at the garage and the automobile of plaintiff was destroyed. Its value was $1,475. Plaintiff obtained $110 for its salvage. There were 80 cars in the garage at the time of the fire and six of these, on the east side of the garage, were burned. All of the cars had keys in them and could be moved, but only one car was taken from the burning garage. It came out the west door. The northeast corner of the garage was partitioned off with plywood for defendant's office, in which he had an oil stove which burned with an open flame. The back where the stove was sitting was lined with asbestos sheeting and the stove was on an iron base. There were two gasoline pumps in the garage, one working. The gas pumps were about 20 feet from the plywood partition which formed defendant's office. Defendant had fire extinguishers according to the fire department's regulations all over the garage. On Saturday night the temperature was five or six degrees above zero, and on Sunday morning it was six to eight degrees above zero. Defendant's employee, Arthur Terrell, went on duty at 7:00 p. m. on Saturday. He testified that the heater was out; and that he did not burn the heater, but sat on the running board of a car in the

northwest corner of the garage near a radiator. He sold no gas after midnight. There was no movement of cars in or out from sometime between 4:00 and 5:00 a. m., when Terrell brought in the last car, a Ford, which he parked on the west side of the aisle at the east door about four feet from the pumps. There was nothing unusual about that car. It was not on fire. Terrell was relieved by Parnell, another employee, at 7:00 a. m. on Sunday before the fire. When Terrell left "everything was O. K.; there was no smoke, no nothing." The fire department received the alarm at 7:19 a. m. and arrived at the garage about two minutes later, at which time the fire, located in the northeast part of the garage, was crossing the sidewalk. Parnell had begun work at 7:00 a. m. Defendant, who spent 16 or 18 hours a day at the garage, arrived there at 7:30 or 7:35 a. m., when the fire was burning. The fire was toward the northeast corner of the building. At 8:00 a. m. the fire was under control.

At the time of the fire Parnell was on duty at the garage. He did not testify at the trial. An investigator, Thomas J. Kelly, testified for defendant that he was unable to find Parnell to serve a subpoena on him. Lyle S. Whitmore, a deputy state fire marshal, testified that as part of his investigation he questioned Parnell, but could not get much information, and that when he questioned him again Parnell claimed he did not see or smell any smoke. Plaintiff's car was more or less completely burned out and was worth nothing more than salvage. The Ford car was in the driveway right in the door and was completely burned inside and out.

Four witnesses testified for defendant. Defendant testified that he had operated the garage for 17 years; that he had three employees; that one worked from 12 o'clock noon until 11 o'clock at night; that one worked from 7:00 a. m. until 5:00 p. m.; and that Terrell worked from 7:00 p. m. until he was relieved in the

morning by the day man. The fuel used to heat the garage was coal. There were two gasoline pumps in the garage, but only one was in use at the time. He used only Ethyl gas. On Saturday night he left the garage at about 8:30. Terrell was then in charge. There was no work done there Saturday night. Terrell's duties as a night man were to take care of the cars, wipe them off, take the customers home and park the cars. When defendant left the garage Saturday night there was nothing unusual about the conditions in the garage. He next saw the garage at about 7:30 Sunday morning. The place was then on fire. He was not permitted by the fire department to go into the garage until about 8:00 a. m. At that time he observed six cars burned and the rest damaged. No part of the building was damaged. The roof was intact except the northeast corner. The gasoline pumps were all right. The boiler room in the basement was all right. Defendant testified that ''there was no accidental fire.'' There was no fire around the pumps and there was no evidence of any explosion. The Ford car in the driveway was completely burned inside and out. It was a 1936 Ford car. There was a radio shop in the west side of the building, which was undamaged. At the time the defendant was legally licensed to operate a public garage. There were fire extinguishers according to fire department's regulations all over the garage. The fire department inspected the garage about once every three weeks. The fire chief from the district inspected the defendant's garage before the fire and approved the arrangement or precautions against fire as far as the defendant knew.

Defendant had an oil stove in his office. The oil was kept in 52 gallon iron drums in the back of the garage. The stove was filled up with about 10 gallons when defendant wanted to use it. The oil used was regular four or five fuel oil. That oil does not explode. The last time the fire battalion chief inspected the garage

he was shown the oil stove. The office was divided by a partition made of plywood. Lyle S. Whitmore, the deputy state fire marshal, testified that his duties were to investigate and determine the cause of fires; that on January 14, 1946, he went to the garage in connection with his duties; that he was accompanied by George B. McNary, a special agent of the National Board of Fire Underwriters; that he found a 1936 Ford car parked near the gasoline pumps at the east entrance to the garage; that McNary and he came to the conclusion that the fire originated in that car; that the fire originated inside the car; that it was entirely destroyed inside; that there was more destruction inside than outside; and that they questioned the owner of the car. Mr. Whitmore testified further that there were only two reasons that he could think of as the cause of the fire, either a cigarette or faulty wiring in the car. He found the gasoline pumps intact. He looked at the boiler room and there was no evidence of any explosion or fire outside of the boiler. The boiler was intact. As a result of his investigation he determined that the fire could have been caused by crossed wires or a cigarette. He had no direct evidence of either one. His belief arose from his conclusions as the result of his investigation. On cross-examination he testified that in his six years experience he had never heard of fire occurring where gasoline fumes were present and oil stoves were in operation, but he added that his investigation of the fire showed that there was no oil stove in operation and that number five oil has a very low flash point.

Simon O'Donahue testified that he is a chief of battalion in the fire department; that on January 13, 1946, he received a call at 7:19 a. m. to go to a fire on East 71st street; that it took about two minutes to get to the fire; that it did not take very long to get the fire under control; that inside the garage he noticed one car pretty well burned; that it was burned more than the others; that this car was a little bit to the west of

the other cars; that there was nothing unusual about the gasoline pumps; that they were not on fire; that the fire was not near the boiler room at all; that he did not go down there; that he was not able to determine the cause of the fire; and that in his official report he stated that the fire was of undetermined origin. Arthur Terrell testified that in January 1946, he was employed at defendant's garage; that his hours were from seven in the evening until seven in the morning; that during these hours he was the sole employee on duty; that he sold gasoline until 12 o'clock midnight; that at that time the pumps were locked; that no gas is sold after that hour; that on the night before the fire he sold no gas after midnight; that the garage was full that night; that he does not deliver any cars on Sunday morning; that he had nothing to do with reference to the heater in the office; that the heater was not burning when he worked at night; that the heater was out; that he was in and out of the office until 12 midnight to make change for selling gas; that after midnight when the pumps are locked he does not go in there; that after 12 o'clock when all the cars are in he stayed over on the west side of the building and that he had no need to go into the office after 12 o'clock; that he brought in the Ford car between four and five in the morning; that he parked it on the west side of the aisle on the east side of the garage in front of some other cars; that when he got out of this car he did not notice anything unusual about it; that he was not smoking that night; that he is not allowed to smoke in the office; that around 7:00 a. m. he left the garage for home; that Parnell had come on duty and was in the garage when he, witness, left; that he did not know where Parnell was at the time of the trial; that he had not seen him since he quit working for defendant; that he does not know where he lives; and that when he left the garage at seven in the morning "everything was all right" to his knowledge.

Plaintiff maintains that it was reversible error for the court to give to the jury instruction No. 9 reading:

"You are instructed that plaintiff is required by law to establish by a preponderance or greater weight of the evidence that the defendant was guilty of negligence which caused the damage to plaintiff's property. If the plaintiff in this case has not so established his case your verdict should be for the defendant."

Plaintiff states that the instruction was erroneous in that it called upon him to prove some specific act of negligence, citing *Brenton v. Sloan's United Storage & Van Co.*, 315 Ill. App. 278, and *Clemenson v. Whitney*, 238 Ill. App. 308. The rule on the question of the burden of proof in bailment cases is stated in *Miles v. International Hotel Co.*, 289 Ill. 320, as follows (327):

"The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of *prima facie* negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault. (*Cummings v. Wood*, 44 Ill. 416; *Schaefer v. Safety Deposit Co.*, supra.) [281 Ill. 43] The effect of this rule is, not to shift the burden of proof from plaintiff to the defendant but simply the burden of proceeding. The bailor must in all instances prove that the bailee was negligent, but when she shows that the goods which she intrusted to the bailee's care were not delivered upon demand she has made out a *prima facie* case or created a presumption of negligence which the bailee may overcome by offering evidence to show that it was not negligent, and if it produces such evidence, the bailor, in order to make out her case, must show that the bailee was, in fact, negligent and that its negligence caused the loss or contributed thereto. It was held in *Sanborn v. Kim-*

*ball,* 106 Me. 355, that the bailee has sufficiently exonerated himself from liability when he has shown that the cause of the loss was a mystery.''

We cannot agree that defendant's instruction No. 9 is susceptible to the construction that plaintiff was required to prove the cause of the fire. The instruction follows the statement of the Supreme Court in the *Miles* case that the ''bailor must in all instances prove that the bailee was negligent.'' In the instant case plaintiff made out a *prima facie* case. The defendant then introduced evidence tending to show that the damage to the automobile was caused without his fault. From all of the evidence a triable issue was presented which was properly submitted to the jury. In our opinion the court did not err in giving defendant's instruction No. 9.

██ Plaintiff urges that the court erred in refusing to give to the jury on its behalf instructions Nos. 1, 2 and 3. The instructions purport to tell the jury about ordinances in effect at the time of the fire. In order to impose liability for damages claimed to be the result of violation of an ordinance it must appear that compliance with the ordinance would have prevented the damage. In our opinion the three tendered instructions were not applicable to the facts of the case and the court was right in refusing to give them.

██ Plaintiff argues that the attorney for defendant used improper argument to the jury, over its objection and to its prejudice. We have read the arguments of the attorneys and cannot find that there was anything improper or prejudicial therein. Plaintiff asserts that the uncontroverted evidence proves that defendant failed to sustain its burden of proof that the fire in question did not proximately result from defendant's negligence. The defendant produced four witnesses whose testimony tended to show that the fire was not due to carelessness and that he exercised the degree of

care called for by the nature of the bailment. Plaintiff introduced the testimony of one witness to make out a *prima facie* case. As heretofore stated, the burden of proof was on the plaintiff to prove its case. Whether defendant's evidence was sufficient to overcome the *prima facie* case made out by plaintiff was for the jury to decide. We find that under all the facts and circumstances in the record the case was fairly presented to the jury. Finding no reversible error, the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

Kiley, and Lewe, JJ., concur.