**Daniel A. COLLINS and Alma Collins, Plaintiffs-Appellees,**

v.

**Guy NEAL, Defendant-Appellant.**

No. 11120.

United States Court of Appeals, Seventh Circuit.

Feb. 9, 1955.

D. S. Baldwin, Danville, Ill., Acton, Baldwin, Bookwalter & Meyer, Danville, Ill., for appellant.

Benjamin I. Norwood, Danville, Ill., Steely, Norwood & Hegeler, Danville, Ill., for appellees.

Before MAJOR, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This appeal is from a judgment for damages for personal injuries sustained by the plaintiffs, Daniel A. Collins and Alma Collins, his wife, as a result of a collision between the automobile in which the plaintiffs were riding, and which was being driven by Daniel Collins, and a farm tractor driven by the defendant Guy Neal. The complaint alleged as negligence (a) that the defendant negligently, carelessly and improperly operated and drove the tractor, and (b) that the defendant operated the tractor on the highway after sunset and before sunrise without having it equipped with and exhibiting a lighted lamp which would throw a red light visible for at least 500 feet to the rear, contrary to the provisions of the statute of the State of Illinois. S.H.A.Ill. ch. 95½, § 204. The defendant appeals on the sole ground that there was not sufficient evidence to support the verdict.

The collision occurred on April 28, 1952, at 9:15 P. M. about six miles south of Casey, Illinois, on Illinois State Highway No. 49. Both vehicles were being driven in an easterly direction, the tractor being in front of the automobile.

The highway at that point was paved with blacktop, the paved portion being 18 feet wide. It was a very dark night, and at the time of the accident the pavement was dry. The highway at the scene of the accident was described as being straight and on a gradual downgrade for about 900 to 1100 feet from the west towards the east. Collins said he had driven about half way down this slope when he met a truck approaching from the east. While passing this truck Collins dimmed his lights and after he had passed the truck a distance of about 100 feet he started to step on the button to flick his lights back to bright and then, for the first time, he discovered the tractor in the highway ahead of him. He said he first noticed the crossbar on the rear of the tractor and estimated that it was then only 25 feet ahead of him. Both Collins and his wife testified that although they were looking straight ahead down the highway, they saw no lights on the tractor. Mrs. Collins estimated the distance from the tractor when she first saw it as being about 35 feet. She said when she first saw it she thought

it was "a blockade in the road with no lights."

Marie Laffan, a fifteen year old niece of Mr. Collins, was asleep in the back seat of the automobile at the time of the collision. After the collision she said she did not see any lights on the tractor.

A few witnesses, most of whom were neighbors and friends of the defendant, testified that they had seen the tractor passing along the highway prior to the collision and that there was a white "plowing light" attached to the left rear fender of the tractor at such an angle that it cast a spot of light down on the pavement to the rear of the tractor. One of these witnesses, Sid E. Johnson, said that shortly before the collision he was driving east along this highway and passed the defendant and his tractor; that he saw the light on the rear of the tractor when he was about a quarter of a mile from it; and that when he was about 200 yards away he was able to determine that the light was attached to a tractor.

A Mrs. Regan said that the rear light on the tractor was visible to her from a distance of 900 feet. This witness also said that from this same distance she could see that the light was on an Oliver tractor. The tractor was painted a dark green and had no bright or polished surface which would reflect light. Mr. Regan, her husband, said that he first saw the rear light on the tractor about 8:30 P. M. when the defendant was still plowing in a field near the Regan's home, and that he saw the light again when the defendant was driving the tractor toward the east along the highway in front of the Regans' home. After the collision Mr. Regan said he went to the scene of the accident. When he arrived there was a wrecker working on the tractor and the Collins' car had already been moved to the side of the highway. When Regan arrived all of the injured had been taken away. He said that at that time one of the front lights on the tractor was burning and that he turned it off.

Another witness for the defendant, Thomas McKinzie, said that the accident happened about 250 or 300 feet west of his home. When he heard about it he went to the scene and on his arrival he said the right front light of the tractor was still burning and the rear light was hanging down by a wire and was flickering on and off as the wire made contact with the crossbar of the tractor. Roy Comer's testimony as to a light on the rear of the tractor was about the same as the testimony of McKinzie. Comer estimated that the rear light was about 2½ or 3 inches in diameter.

Don Shanks was the first person to reach the scene after the collision. He said that he did not notice any lights burning on the tractor. Guy Neal, the defendant, testified that the rear light and the front lights on the tractor were burning prior to the accident.

■ Counsel for the defendant, while "fully cognizant of the well established and recognized rules of law that if there is any evidence fairly tending to prove plaintiffs' contentions the cause must be submitted to the jury and that in determining this issue the evidence must be taken in its best light for plaintiffs," insists, however, that where, as in this case, "the evidence offered on behalf of plaintiff has been so discredited or so completely refuted by evidence, facts and circumstances in opposition thereto as to become incredible and unworthy of belief, it amounts to no evidence and presents no issue of fact for submission to a jury," and that the court should, therefore, have directed a verdict to find the defendant not guilty or should have entered judgment notwithstanding the verdict. See Metropolitan Railroad Co. v. Moore, 121 U.S. 558, 7 S.Ct. 1334, 30 L. Ed. 1022. It was the failure of the trial court to direct such a verdict or to enter such a judgment on which the defendant's counsel bases his request that the judgment should be reversed and the cause remanded with instructions to enter judgment for the defendant.

To sustain his contentions counsel for the defendant first points out that in

addition to defendant's own testimony that there was a light on the rear of his tractor, Sid Johnson and Mr. and Mrs. Regan all testified that shortly before the accident they saw the white light burning on the rear of the tractor as it was passing along the highway. Counsel for the defendant was particularly impressed by the testimony of Mr. Johnson. But the jury may well have wondered about Johnson's testimony because he testified that he first saw the light on the rear of the tractor when he was about a quarter of a mile distant from it, although all agreed that the light did not shine directly to the rear but was directed down at a sharp angle so that when the tractor was being used for plowing this rear light would reveal the furrow directly to the rear of the tractor. All of the other parties testifying on this question said that the night of the accident was a very dark night—that there was no moon shining, but Johnson testified that there was "about a half moon." On direct examination Johnson said, as we pointed out above, that when he was 600 feet behind the tractor he could see that the light was attached to a tractor. On cross-examination, however, Johnson said that when he was 600 feet behind the light he could "determine it was either a truck or tractor" ahead of him, and that as he "came closer" he discovered it was a tractor. But on further cross-examination he said that the lights on his truck were sufficient to light up the back end of the tractor 600 feet away—that he could see it "plain".

The jury may also have doubted the testimony of Mrs. Regan that at 900 feet distant from the tractor that night she could see that it was an Oliver tractor, although the tractor was painted a dark green and there was no light directed on it.

The jury heard Glenn C. Kibler, an Illinois State Policeman who came to investigate the accident, say that he did not notice any light on the tractor when he arrived at the scene. Nor did Don Shanks, who was the first person to arrive on the scene after the collision, notice any lights on the tractor.

If the above were the only evidence involved we would clearly have conflicting evidence the value of which depended on the credibility of the various witnesses—a question for the jury to determine. Wright v. Paramount-Richards Theatres, 5 Cir., 198 F.2d 303, 307–308.

However, counsel for the defendant argues that plaintiffs' exhibits 1, 2 and 3, being photographs of the highway where the accident occurred, show skid marks on the pavement which prove that plaintiff Collins actually saw the tractor when he was more than 100 feet distant from it, and also prove that he was driving his automobile "at such a terrific rate of speed that * * * Collins was unable to either control it, or stop it or slow it down sufficiently after he had discovered the presence of defendant's tractor more than 100 feet in front of him."

Kibler, the state policeman, testified that on the night of the collision he received notice of the accident between 9:15 and 9:25 when he was at Casey, Illinois, and that he then drove seven miles to the scene of the accident. He approached the point of collision from the east. When he arrived there he said that there were four or five cars which had collected east of a culvert which was just east of the point of collision, and that he did not know how many cars there were on up the east grade but that there were enough to cause a traffic jam. Kibler did not say how many cars had collected on the west side of the collision point, but the jury may well have inferred that by the time Kibler arrived several cars had also approached that point from the west and may have applied their brakes and skidded when the drivers saw that there had been an accident and that the road was blocked. Thomas McKinzie reached the scene before the state police officer. He said that even when he arrived some other cars were there—"they was beginning to gather."

Kibler said that on the night of the accident, after he had set out flares in the highway in each direction from the wreck, after the injured had been removed and after the Collins' car had been removed from the pavement, he measured some skid marks extending easterly down the grade on the south side of the pavement which marks suddenly verred to the left just west of the point of collision. Kibler said he measured these marks that night and that they extended back towards the west 119 feet from the point of the collision. He said the skid marks which he measured were those shown on plaintiffs' exhibits 1, 2 and 3, which were photographs of the highway taken at the scene of the accident on the following day. But Kibler admitted that the skid marks he measured, according to exhibit 2, coincided with some other skid marks which could have been made by some other automobile.

Thomas McKinzie also identified the tire marks shown on the photographs as skid marks he had seen on the pavement on the night of the accident and said their length was something like 125 feet. Roy Comer, who arrived shortly after the accident and who traveled up and down the highway at that point in placing flares out in each direction, said nothing about such skid marks. Don Shanks, who also arrived shortly after the accident, said he saw some skid marks which he estimated as being 50 to 75 feet in length.

A careful examination of the photographs which were shown to the jury as plaintiffs' exhibits 1, 2 and 3, convinces us that these exhibits furnished evidence from which the jury could properly have found that any skid marks at that point which extended for any such distance as contended for by the defendant were not skid marks made by the plaintiffs' automobile but were marks made by other automobiles which arrived at the scene after the collision. Burcham v. J. P. Stevens & Co., 4 Cir., 209 F.2d 35, 39–40.

On this question the jury was entitled to consider the description by Kibler of skid marks which the defendant would have the jury believe were made by the Collins' car. Kibler described these marks as being without any break. He said they "started out with a shadow where the brakes were first applied and the lines got heavier until the point of contact." It is inconceivable that the driver of an automobile, seeing a vehicle ahead of him, would then start to apply his brakes and would apply them with constantly increasing pressure right straight toward the other vehicle and yet would make no move to turn out to pass the other vehicle until within only a few feet of it.

We do not have here physical facts admitted by the parties or inspected by the jury which flatly contradict and therefore nullify oral testimony. Instead we have oral testimony as to physical facts, the alleged skid marks, and photographs which at least cast serious doubts on the oral testimony describing the skid marks. We therefore still have a question of fact for the jury as to the length of the skid marks made by the Collins' automobile.

■ We agree with defendant's contention that if he had a white light on the rear of the tractor, his failure to have complied with the Illinois statute by not having had a red light instead, would have constituted actionable negligence only by a showing that the failure of the light to be red constituted a proximate cause of the collision. Earl W. Baker & Co. v. Lagaly, 10 Cir., 144 F. 2d 344, 154 A.L.R. 1098; Morrison v. Le Tourneau Co. of Georgia, 5 Cir., 138 F.2d 339; Curran v. Chicago & Western Indiana Railroad Co., 289 Ill. 111, 124 N.E. 330; Hollingshead Motors Co. v. Crogan, 336 Ill.App. 423, 84 N.E.2d 440. But we also agree with the plaintiffs that the jury could find from the evidence and under proper instructions that the action of defendant in driving his dark green tractor without any rear light on a very dark night along a heavily

traveled state highway could properly be found to constitute negligence which resulted in the collision and in the resultant injuries to the plaintiffs.

The appellant has not made the instructions of the trial judge a part of the record on this appeal. In the absence of such instructions in the record we must assume that the jury was properly instructed on all pertinent questions of law. H. M. Byllesby & Co. v. Welch, 8 Cir., 82 F.2d 539.

Finding no error, the judgment of the District Court is

Affirmed.