George J. Priester, d/b/a Priester Aviation Service, Appellant, v. Hubert G. Judkins, Appellee.

Gen. No. 46,614.

First District, First Division.

October 31, 1955.

Released for publication November 16, 1955.

Joseph I. Bulger, of Chicago, for appellant.

A. R. Basile, of Oak Park, for appellee; Frank J. Siska, Jr., of Broadview, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

George J. Priester sued Hubert G. Judkins for $302.50 damages to a rented airplane and $20.96 as rental therefor. A trial without a jury resulted in a judgment in favor of the plaintiff for $20.96. Plaintiff, appealing, asks that judgment be given in his favor for $323.46.

The plaintiff operates an airplane service and hangar at the Elmhurst airport. On June 29, 1953 the defendant, a licensed pilot, rented a Piper Clipper Airplane from the plaintiff. He intended to fly it to Kewanee, Illinois, and return. Defendant had informed his cousin, an optometrist living near Lafayette, Illinois, that he would circle his house as a signal of arrival before landing at the Kewanee airport, where he and his pas-

sengers would be picked up by the cousin in an automobile. Lafayette is about 10 miles south of the Kewanee airport. Defendant was accompanied in the airplane by his oldest son and his brother, who acted as navigator. There was a preflight check of the airplane by the defendant and a servant of the plaintiff. It carried 18 gallons of gas in the wingtank and 12 gallons in the fuselage. The weather was clear but damp and a little hazy. The trip to his cousin's house took about an hour.

Defendant testified that as he started circling the house the engine ran "very rough"; that he "gunned" it twice on the last circuit; that he could not get proper revolutions per minute out of it to maintain flight; and that he checked the fields in the vicinity for the purpose of landing. The field he selected was 1200 feet in length and was bisected by a ditch. There was a fence at the end of the field. He established his pattern and glide. He touched down at the ditch and thereafter had 600 feet in which to stop the plane. He could not get any action out of the brakes because of wet grass and he was traveling pretty fast. He knew that he would hit the fence and intentionally ground-looped the airplane. He and his passengers got out of the airplane. In a few minutes his cousin came over, picked them up in his automobile and took them to his house. Defendant called plaintiff on the telephone and told him of the occurrence. That afternoon two employees of the plaintiff arrived at the field. They found that the airplane had skidded sideways and up against a fence and that the landing gear, lower part of the fuselage and two wing struts on one wing were damaged. The employees, who are experienced pilots, examined the engine and it checked out "perfectly satisfactory." The engine operated normally. After repairing the landing gear and fuselage, one of the employees flew the plane off the field and back to the Elmhurst airport. After the plane was brought back and repaired it was flown 400

or 500 hours and there was no "trouble" with it. Plaintiff established that the reasonable charges for repairing the damaged airplane were $302.50 and that the reasonable charge for the use of the plane was $20.96.

█ The rule relating to the burden of proof in bailment cases is stated in Miles v. International Hotel Co., 289 Ill. 320, as follows (327):

"The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of *prima facie* negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault. [Citing cases.] The effect of this rule is, not to shift the burden of proof from plaintiff to the defendant but simply the burden of proceeding. The bailor must in all instances prove that the bailee was negligent, but when she shows that the goods which she intrusted to the bailee's care were not delivered upon demand she has made out a *prima facie* case or created a presumption of negligence which the bailee may overcome by offering evidence to show that it was not negligent, and if it produces such evidence, the bailor, in order to make out her case, must show that the bailee was, in fact, negligent and that its negligence caused the loss or contributed thereto. It was held in Sanborn v. Kimball, 106 Me. 355, that the bailee has sufficiently exonerated himself from liability when he has shown that the cause of the loss was a mystery."

See also Lederer v. Railway Terminal & Warehouse Co., 346 Ill. 140; Hollingshead Motors Co. v. Crogan, 336 Ill. App. 423, 430.

█ The defendant had no satisfactory explanation for his actions. His brother and son accompanied him in the airplane. Neither was called as a witness to corroborate his testimony. The motor was functioning perfectly when it left the Elmhurst airport and it func-

tioned perfectly when tested on the field after the mishap. It was flown back to Elmhurst and has since flown many hours without incident. Defendant's account is in direct conflict with the testimony of the experts, including his own. All testified that at 1600 r.p.m., the reduced speed, the aircraft was in sustained flight. Defendant said the plane made a landing and rolled more than 600 feet down the field, that it was going so fast at the end of the roll that he knew he was going to hit the fence headon, and that at the last minute he made an intentional ground loop and hit it sidewise. Normally, that plane can be stopped within 600 feet after touching down. The evidence shows that there were 18 gallons of gas in the wingtank when the plane took off from the Elmhurst airport and that after the landing in the field near Lafayette this tank was empty. The engine on this aircraft consumes between 6 and 7 gallons of gas per hour. The consumption of gas indicates that he had flown the plane approximately 2½ hours. The flight from Elmhurst took 1 hour. There was no explanation as to what became of the remainder of the fuel. The unexplained failure to control the plane after touching ground shows that the defendant was negligent in operating the airplane and that his negligence caused the damage. Ebbert v. Metropolitan Life Ins. Co., 369 Ill. 306, 310, 311.

The judgment of the Circuit Court of Cook County is reversed and the cause is remanded with directions to enter judgment in favor of plaintiff and against defendant for $323.46.

Judgment reversed and cause remanded with directions.

FRIEND, P. J. and NIEMEYER, J., concur.