CASE 52—PETITION—MAY 21.

|101  303|
|e119 597|

# Omberg v. United States Mutual Accident Association.

APPEAL FROM JEFFERSON CIRCUIT COURT.
LAW AND EQUITY DIVISION.

1. ACCIDENT INSURANCE—EXTERNAL, VIOLENT AND ACCIDENTAL MEANS.—Where one comes to his death by blood poisoning superinduced by the bite or sting of an insect, his death is effected through "external, violent and accidental means" within the meaning of a policy of accident insurance.

2. EVIDENCE.—In an action for loss under policy against death by accident, a statement of the deceased to the physician upon which the physician forms his opinion and makes a prescription, is competent evidence to prove what was the actual cause of his illness and death, although the symptoms are such as might be produced either by disease or by the accident.

3. ACCIDENT INSURANCE.—Death caused by blood poisoning superinduced by the bite or sting of an insect, is not the result of "poisoning in any form or manner" or "contact with poisonous substances," within the meaning of an accident policy.

O'NEAL & PRYOR FOR APPELLANT.

1. The death of Omberg was caused by blood poison brought about by the sting of an insect, which was by "external, accidental and violent means" within the meaning of the policy of insurance. Bacon v. U. S. Mutual Accident Association, 44 Hun., 599; May on Insurance, 3d Edition, 2d vol., 1190 and 1193; Mallory v. Travelers' Ins. Co., 47 N. Y., 53; Ins. Co. v. Burroughs, 60 Penn. State, 43.

2. The mosquito bite was the approximate cause of death. Whether the cause was approximate or remote does not depend alone upon nearness in point of time which certain events occurred. The question is not controlled by distance or time, or by the succession of events; an efficient and adequate cause being found, must be deemed true unless some other cause not incidental to it, but independent of it is shown to intervene between it and the result. Kellogg v. Ry., 32 Wis., 223; McCarthy v. Travelers' Ins. Co., 8th, Ins. Law Journal, 208; Insurance Co. v. Tweed, 7 Wallace, 44; American Accident Co. v. Reigart, 94 Ky., 547.

3. The statements of Omberg as to the cause of his injury were so closely associated with the injury itself that it is within the scope of the rule relative to *res gestae*, and his statements to his physician are competent. Dalbert v. Travelers' Ins. Co., 2 Cin. Superior Court Rept., 98; Barbour v. Marion, 11 Allen, 324; Fort v. Brown, 45 Bar., 369; Aveson v. Kinnaird, 6 East, 188; Bliss on Life Ins., 2d Edition, p. 633; Caufman v. Rieves, 62 Ind., 342.

PHELPS & THUM, AND ALFRED SELLIGMAN OF COUNSEL ON SAME SIDE.

HUMPHREY & DAVIE FOR APPELLEE.

1. The policy was an accident policy covering death by accident, and not death by disease, and there was no legal evidence showing that the death was caused by accident.
2. The mosquito bite was not the approximate cause of Omberg's death, there being a failure to unite the aneurism or the death with the mosquito bite.
3. The testimony of the physician and the sister of the deceased, as to his statements with reference to the mosquito bite was incompetent. Insurance Co. v. Mosely, 8 Wal. 397; Rossier v. Boston Loan Co., 132 Mass., 439; Wharton on Evidence, 3d Edition, 265 and 268; Dariegai v. R. R. Co., 55 Conn., 285; Reed v. R. R. Co., 3 N. Y., 557; Grand Rapids, &c. v. Hundley, 39 Mich., 543; Greenleaf on Evidence, vol. 1, sec. 110; Waldele v. N. Y. R. R. Co., 95 N. Y., 283; Texas R. R. Co. v. Crownder, 70 Texas, 326; Davison v. Cornel, 132 N. Y., 228; Merke v. Bennington, 58 Mass., 186; Illinois Cent. R. R. Co. v. Sutton, 42 Ill., 438; State of Vermont v. Davison, 30 Ver., 377; Willis v. Bernard, 8 Bingham, 376; Abbott's Trial Evidence, p. 599.
4. But considering Omberg to have been bitten by a mosquito, and that the hearsay evidence is competent, it was not a "violent, external and accidental death" within the meaning of the policy. (Bacon v. Ins. Co., 123 N. Y., 304; 20 Amer. State Rept., 748); but if it had been shown that it was a death from poisoning the policy prohibits recovery where the death is from poisoning.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

This is an action on a policy of insurance against bodily injuries and death effected through "external, violent and

accidental means." The policy was issued by appellee company to Adolph Omberg, and in case of his death alone through the means indicated, the indemnity—$5,000—was payable to his wife, who is here the appellant. Upon the conclusion of the trial below it was the opinion of the court that there was a failure of proof to sustain the plaintiff's contention that her husband's death had been caused through the means and under the conditions provided for in the policy, and a peremptory instruction followed.

The vital question in the case is was the death of Omberg effected through "external, violent and accidental" means, or was his death caused by disease?

Incident to this question is one respecting the competency of certain testimony offered by the appellant and rejected by the trial judge, conducing to show the nature and origin of the alleged accident, resulting, as she contends, in the death of the assured.

And still further is the question, whether, conceding that Omberg's death was the result of the bite of an insect, which produced septic poisoning, as is contended by appellant, payment of the policy is yet to be denied because the insurance was not to extend to or cover accidental injuries or death resulting "from poison in any form or manner" or "contact with poisonous substances?"

And, first, was the death of the assured the result of a disease or of an accident? Omberg was a traveling salesman of Louisville, Ky., and a stout, healthy man of some forty-eight years of age. On or about July 20, 1893, while out on a business trip, he went to his sister's home in Rome, Ga. He was very lame; his foot was swollen and there was an

(20)

inflamed red spot on one of his toes, with a pimple or place in the center of the spot, presenting the appearance of a puncture or bite of an insect. He grew worse, complaining solely of his foot; within a few days, the 23d of the month, perhaps, a physician was sent for to treat his foot, who found "an abscess at the base of the fourth toe on the right foot, which was very tender and very much inflamed, with a good deal of redness over the whole top and outside of the foot." The spot was about as large as a dime, "quite tender to the touch, with a very deep red color and considerably elevated." In the opinion of the physician the place presented such an appearance as might have resulted "from the sting or bite of an insect." The physician opened the abscess on the day following his first visit, and there was a discharge of a quantity of "rather unhealthy pus." In about a week he had a very severe chill, followed by another some two or three hours later, accompanied with severe vomiting and followed by purging and persistent vomiting, which continued to his death, on the 12th day of August. When asked from what his patient was suffering when he first saw him until his death, the physician answered "some septic poisoning," commonly called "blood poisoning;" and, further, that blood poisoning would cause the chills, vomiting, etc. He further testified that the immediate cause of death was the rupture of an aneurism in the abdominal region, and this was itself induced by the persistent and excessive vomiting. This witness further testified that the bites of insects, such as mosquitoes or flies often caused blood poisoning, and he had often observed parts badly swollen from mosquito bites and bites from other insects; that he observed no traces of

any kind of disease in his patient from which he could judge he had heretofore suffered except dyspepsia or indigestion—and these would not have produced blood poisoning. These facts were obtained from a physician who had known the deceased some ten years. A consulting physician of some sixteen years' experience in infirmaries and hospitals was called in and his testimony is corroborative of his colleague as to the presence of blood poison in the system of the patient. It further appears that the physician first sent for, inquired of the patient, who was then only suffering from the inflamed spot on his foot, what caused the trouble, and was told by the patient that "a few days prior to this, early in the morning and before he got out of bed, the cover was thrown off his feet, and a mosquito bit him on the spot, and that he felt some uncomfortable feeling in this toe that prevented him from wearing his shoe."

This proposed evidence was rejected. It also appeared that Omberg made similar statements to his sisters when he came to their house in explanation of his lameness and the swollen condition of his toe and foot. These statements were also rejected.

The body of Omberg was brought to Louisville, where, in about two weeks after his death and when the remains were badly decomposed and affected by the use of embalming fluid, an autopsy was held which failed to disclose any evidence of blood poisoning, but, on the contrary, conduced to show that death had been caused by disease—namely, by the rupture of an abdominal aneurism—a disease shown to be of gradual development. This is in substance the case and the state of fact presented. The trial court instructed peremp·torily for the defendant.

We think this was error. Whether the death of Omberg was caused by blood poisoning itself, superinduced by the bite or sting of some insect, was a question of fact for the jury; the affirmative of these propositions was supported by the evidence of the two attending physicians, and which is confessedly entitled to much weight. Even if we discard the statement of the patient that the spot on the foot was the result of the bite of a mosquito, we still have the condition of the inflamed part, which, in the opinion of an expert, presented such an appearance as might have been caused by the sting or bite of an insect. The jury might have reason-ably concluded from this evidence that the injury to the toe was so caused, especially as such a condition is shown not to be an unusual result of such sting or bite. The jury might also have believed that death was caused by blood poisoning, induced by the sting or bite—they certainly might have so believed from the evidence of the attending physicians. When these conclusions on the facts are reached we are of the opinion that, as a matter of law, the death of the assured could be as truly said to have been effected through "external, violent and accidental means" as though death had been caused by the sudden, unforeseen and unexpected bite of a poisonous snake. The bite was external, violent and acciden-tal. If a bite at all it was certainly external. It came from without, and its marks were even visible to the naked eye. The force of it was not as great perhaps as if inflicted by a rattlesnake, but the means were not the less violent within the meaning of the policy. It was also accidental because unexpected, unforeseen and happened as by chance. It was not designed or brought about voluntarily. But for it, the

blood poisoning and death would not have resulted. The blood poisoning was consequent on the wound; the bite would, therefore, be the proximate cause of death. Death from peritonitis induced by a fall, is nevertheless said to have been due to the fall unless the assured already had the disease when he fell. (Freeman v. Mer. Mut. Acc. Assn., 156, Mass., 351). So as to erysipelas caused by a fall; and so as to blood poisoning caused by the hurt of a finger. Martin v. Equitable Accident Assn., 61 Hun., 467). Whether the fall tor hurt in fact caused the peritonitis, erysipelas or blood poisoning, were said to be questions of fact in the cases cited. We are of the opinion also that the declaration of the patient to his attending physician, to the effect that the injury was the result of a bite, was competent. A narrative of the events attending the mishap would not be competent, but the patient may tell what the injury is if he knows; he is suffering and is seeking relief; to get it he must tell the truth; any other course would mislead his physician and might result disastrously; he knows whether he has bruised the inflamed parts or whether he has been bitten by an insect. Such statements are part of the description of the wound, and inseparable from the patient's complaint with respect thereto.

The case of Dabbert v. Travelers Insurance Co., 2 Cinti. Sup. Ct. Rept., 98, is directly in point. This case is reported by Mr. Bigelow in volume 4, page 366, of his Life and Accident Insurance Reports, and the court (Judge Alonzo Taft) holds that "in an action for loss under a policy against death by accident, a statement made by a decedent to his physician, upon which the physician forms his opinion and makes a

prescription, is competent evidence to prove what was the actual cause of his illness and death, although the symptoms are such as might be produced either by disease or by the accident."

In that case the insured became suddenly sick and to his physician attributed his sickness to an injury to his back and side by a fall received when no one was present. The learned judge said: "I am satisfied that there is a tendency in the decisions of the present time to enlarge the range of testimony, especially when it is necessary to avoid a failure of justice. The statements of the history of his case made to his physician by a patient who is seeking relief from pain and severe sickness are entitled to credit. To state untruly to his doctor the cause of his sickness would be directly against his most vital interest in saving his health and life; in such case the absence of a statement by the patient of such a cause of his sickness would be an important element in forming the physician's opinion. For if a patient did not refer to such an accident as the cause of his sickness, the doctor would necessarily conclude that the symptoms did not come from such a cause," citing Fort v. Brown, 45 Barb., 369, and Barber v. Mertiam, 2, Allen, 324. These cases fully support the opinion. Mr. Bliss, in his work on Life Insurance, second edition, page 633, says: "In a case where an action was brought on an accident policy, the Supreme Court" (evidently referring to the Dabbert case) "passed upon the question of the admissibility of the declarations of the insured as to the injuries he had suffered, and the mode in which they were incurred. They held that the declarations of a party himself, to whomsoever made, are competent evidence when confined strictly

to such complaints, expressions and exclamations as furnish-
ed evidence of a present existing pain or malady to prove his
condition, ills, pains and symptoms, whether arising from
sickness or from injury by accident or violence.   If made to
a medical attendant they are of more weight than if made to
another person.   So is a declaration, made by a deceased
person contemporaneously or nearly so with a main event,
by whose consequence it is alleged that he died, as to the
cause of that event.   The views adopted in the cases cited
from Ohio and Kansas seem most in accordance with correct
principles."   We are not disposed, however, for obvious
reasons, to extend this doctrine so as to embrace declarations
made to others than to the patient's physicians.

We are further satisfied in this case that the death of the
assured, if it occurred as claimed by the appellant, was not
the result of "poison in any form or manner" or "contact
with poisonous substances" within the meaning of those
provisions in the policy.   If so, then if blood poisoning were
the immediate cause of death from an accidental gun shot,
the clause would prevent recovery—a conclusion wholly at
war with the manifest purpose of the contract.

So death from a rattlesnake bite is clearly from poison
and contact with poisonous substances, but we presume no
one will contend that recovery in such a death could be
denied.   Such causes of death as are last mentioned are not
understood to be causes of death from poisoning or contact
with poisonous substances in the ordinary meaning of those
terms.

The judgment is reversed for proceedings consistent with
this opinion.

Chief Justice Lewis not sitting.