## Commonwealth Power Railway and Light Company v. Vaught.

(Decided May 24, 1921.)

### Appeal from Boyle Circuit Court.

1. Negligence—Negligence Per Se.—To leave open and unguarded a cellar door, which is a part of a pavement or sidewalk used by the public, is negligence per se.

2. Damages—Excessive Damages.—A verdict for $2,500 for a permanently knocked down knuckle, and for an injury to a man's tes-

ticles, as a result of which he suffered excruciating pain, and from which resulted a stricture which caused him trouble in urinating and which could be only partially relieved by an operation, and even after such operation there would not be a complete cure and certain soundings would occasionally necessarily have to be made, resulting in inconvenience and pain, was not excessive.

3. Trial—Argument of Counsel.—In argument counsel may refer in a proper way to things that take place during the trial, and may make any reasonable deduction or fair inference to be drawn from such occurrence. Where two doctors were appointed upon motion of the defendant to examine a plaintiff as to his injuries, and defendant introduced only one of them and the plaintiff then introduced the other, plaintiff's counsel in argument might fairly refer to that fact.

JOHN W. RAWLINGS and GEORGE E. STONE for appellant.

HENRY JACKSON and JAY HARLAN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

In January, 1919, the appellee was employed by the Southern Express Co., at Danville, Ky., as a deliveryman, and in that capacity it was his duty to deliver and to receive from shippers packages handled by the express company.

On one day in that month it became his duty to go to and receive from a second-story apartment on Main street in Danville for shipment a large box weighing three or four hundred pounds. The entrance to the stairway leading to this apartment was in an offset or small court between two buildings, and the pavement there extended into the offset between the two business houses, and this offset or court was a part of the pavement used by the public. At or near the entrance to the stairway was an iron cellar door composed of two iron gratings built into the pavement, and which when closed were a part of the sidewalk; this door was an entrance to the cellar of one of the buildings, and the two gratings when lifted, one to the east and one to the west, stood approximately upright but with a slight slant outward, and when so opened left an aperture of approximately three by four feet, and the depth of the cellar was about four or five feet.

Appellant entered the stairway and left his wagon at the curb; in bringing the large box down the stairway he had no assistance other than that of one or two small

boys, and it is not clear from the evidence what actual assistance they rendered him; at any rate, in bringing the box down the stairway it was necessary for him to come down backwards, having hold of the front end of the box, which was three or four feet long; and either with the assistance of the boys or by dropping the other end from step to step, he managed to thus take the box down.

According to the plaintiff's evidence, the door or gratings were closed when he entered the stairway but were opened by appellant's agents while he was in the apartment, and without notice to him, and he says that when he backed down the steps with the box and out on to the street, he straddled one of the iron gratings that were approximately upright and fell into the hole, the large box falling on top of him; that in his contact with the iron grating his testicles were mashed and bruised and, in some way not explained, one of the knuckles on his left hand was permanently knocked down.

He was confined to his home for about three weeks and was unable to return to his work for 39 days; while he was confined to his home the doctor visited him twice and after he was able to get out he frequently went to the doctor's office for treatment.

In this action for damages the jury returned a verdict for $2,500 in favor of the plaintiff, and the defendant's motion for a new trial having been overruled, it appeals.

Four grounds for reversal are insisted upon: (1) error in the instructions; (2) excessive damages; (3) the failure of appellee to minimize his damages by submitting to an operation; (4) improper argument of counsel.

(1) It was admitted that the defendant's agents and employes opened the door into the cellar, but it was the defense that the grating was open when appellee entered the building and that an agent or employe was left on guard at the opening to warn persons using the sidewalk. There was some conflict on this issue, one of appellant's employes testifying that he warned appellee against backing into the cellar, while appellee states that he received no such warning, and one or two other witnesses state that the agent so claiming to have warned appellee was at the time of the injury down the street some little distance away looking into a window.

So that it is apparent that the controlling question of fact in the case was, whether appellant had an agent on

guard at the door and, whether that agent warned appellee.

In giving its instructions the court carefully followed the rule laid down in the case of DeHaven v. Danville Gas Light Co., 150 Ky. 241, in which case it was held to be negligence as a matter of law to leave open a cellar door in a much frequented pavement without precaution being taken to protect the hole, the court holding expressly that to leave such a door open unguarded was negligence as a matter of law. In that case on a trial the jury found a verdict for the defendant, and upon appeal this court reversed that judgment because the court had submitted to the jury the question whether the defendant's agents had negligently suffered the door to remain open, and laid down the rule that to permit a door in a sidewalk to remain open without being guarded was negligence *per se.*

In accord with that ruling the lower court in this case instructed the jury, in substance, that they should find for the plaintiff unless they should believe from the evidence that the defendant's agent was present immediately before and at the time of the accident and warned the plaintiff of his danger; or unless they should believe from the evidence that the plaintiff on that occasion failed to use ordinary care for his own safety, and that his failure contributed to the injuries to such an extent that they would not have been received but for such failure, and that if they believed either of these two things they should find for the defendant.

It will be seen that the latter part of the court's instruction covered the defendant's plea of contributory negligence.

The instruction submitted the only issues upon which the defense was based, for it is not to be questioned that if the defendant's agents opened this cellar door on the pavement and left it open without a guard, it was guilty of negligence *per se,* and the questions have been fairly submitted—in fact, we may say submitted with unusual clarity.

The instructions offered by the defendant in effect proposed to submit to the jury the issue whether the defendant's agents had negligently left the door open and unguarded, the very thing which the court condemned in the DeHaven case.

(2) Appellee is forty years of age and at the time of his injury was getting a salary of $75 per month. The appellant's argument is that the damages are excessive because appellee was only shown to have been away from his work 39 days, and because no permanent injury was shown.

It is true that he remained only that length of time away from his employment, but he states in his evidence that since the injury he has not been able to do his customary work and usual lifting without pain, and that he still, at the time of the trial, nearly nine months after the injuries were received, suffered from the same, and that at the time of the injury he "suffered death and was crazy from pain."

So far as the injury to his knuckle is concerned, one of the doctors introduced testified that it will always be in the same condition, and the plaintiff and his physician each testify that he is still suffering from a bad stricture as a result of the accident, the plaintiff stating that even at the time of the trial he had great difficulty in urinating and that it was painful. His physician states that his urethra was injured and that he had a stricture as a result of the injury which caused him trouble in urinating, and the plaintiff himself states explicitly that he never had any trouble of that nature before the injury. The physician states, in answer to the question whether the plaintiff was permanently injured: "I would say so without a surgical operation for the stricture, requiring after care, and to be sounded occasionally for rest of life to keep scar tissue stretched. The injured hand will remain as it is, knuckle down."

From this evidence it is apparent that the jury was authorized to find not only that the injury to the knuckle was permanent but that the stricture resulting from the injury to the testicles and urethra would remain permanent in the absence of an operation, and even if such an operation were had and the stricture should thereby be removed in a measure, still there would be required for the rest of his life occasional soundings which apparently would involve not only much inconvenience for the whole life of the man but would be accompanied by considerable pain.

From this evidence the jury was fully authorized in finding that each of the injuries was in a proper sense a

permanent injury, and that being true, the verdict cannot be said to be excessive, and especially in the light of the common knowledge that an injury to the testicles, even though slight, involves the most excruciating pain.

(3) The complaint of appellee's failure to minimize his damages by submitting to an operation, even if otherwise available, cannot be considered. An examination of the grounds for a new trial discloses that this was not one of them.

(4) During the trial, on motion of the defendant, Doctors Montgomery and Jackson were appointed by the court to ascertain the condition of the plaintiff. Appellant then introduced Dr. Montgomery, and, in substance, he stated that his examination disclosed that plaintiff was not suffering from a stricture; but failed to introduce Dr. Jackson. The plaintiff thereafter introduced Dr. Jackson, who had been plaintiff's regular physician, who reiterated, after his examination of the appellee under order of the court, that he was suffering from stricture.

During the argument by plaintiff's counsel, in referring to this, he said: "Mr. Rawlings did not seem anxious to have the jury know the result of the examination after it was made." And again in the same connection he said: "I do not blame this defendant for not wanting the result of the examination after it was objected to;" and it is claimed that these statements constituted an improper argument.

Counsel in argument is within his rights in referring in a proper way to things that take place during a trial, and in such argument may make any reasonable deduction or fair inference that may be drawn from such occurrence. The two doctors had been appointed upon the motion of the appellant, and its failure to introduce one of them after having him appointed was a subject to which counsel of the other side might fairly refer and draw therefrom any reasonable or just inference. The reference, even if error, was trivial.

On the whole case, we see no error prejudicial to the substantial rights of the appellant, and the judgment is affirmed.