219 So.2d 524 (1969)
Wallace J. JOHNSON and Anna Louise Breaux Johnson, Plaintiffs-Appellants,
v.
ST. PAUL MERCURY INSURANCE COMPANY et al., Defendants-Appellees.
No. 2592.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1969.
Rehearing Denied March 12, 1969.
*525 Hugh E. Brunson, Crowley, for plaintiffs-appellants.
Thomas Robert Shelton, of Carmouche & Shelton, Rayne, Stockwell, St. Dizier, Sievert & Viccellio, by Robert Thomas, Lake Charles, Marcantel & Cassidy, by Bernard N. Marcantel, Jennings, Clarence E. Romero, Welsh, for defendants-appellees.
Before TATE, FRUGÉ and CULPEPPER, JJ.
FRUGÉ, Judge.
Plaintiffs seek damages for the death of their two and one-half year old son, Marcus Wayne Johnson, who died on October 24, 1965 of salicylate (aspirin) poisoning. Defendants are Dr. John McClure, physician, his insurer, St. Paul Mercury Insurance Company, the Welsh General Hospital and its insurer, Firemans Insurance Company of Newark, New Jersey, and Mrs. Charlene Augustine Ardoin and Mrs. Joseph E. Ewing, employees of the Welsh General Hospital.
On October 23, 1965, Mr. and Mrs. Johnson awoke sometime between the hours of 6:00 and 7:00 a. m. to find their child, Marcus, playing in the kitchen of their home with an open bottle of aspirin. It *526 was established that the aspirin were of the adult size of Bayer aspirin, and that in all probability the bottle was of the 100-tablet size.
When the child was discovered he was amid quite a number of aspirin scattered over a large area. Upon discovering the child playing with the aspirin, the parents removed the child from the kitchen and picked up all but the aspirin they could not reach. Mrs. Johnson testified that she checked his mouth and found nothing inside, but she did find traces of aspirin powder on his chin. In any event, Mr. and Mrs. Johnson were not alarmed by this incident, in that they did not believe that the child had taken any aspirin due to the fact that he did not like them, or that he had only taken a small quantity.
After the aspirin episode occurred, the Johnsons and their children left their home near Laccasine, Louisiana, and proceeded to Crowley, Louisiana, to attend the Rice Festival on Saturday, October 23, 1965. Upon their arrival in Crowley, the Johnsons proceeded to Mrs. Johnson's mother's home where they left some of the children, including Marcus, and proceeded to partake in the festivities in the streets.
The Johnsons returned later that day, where they were told that the child had vomited while they were gone. Since the child was playing with older children and appeared to be all right, the Johnsons were not alarmed, and returned to the festival where they stayed approximately one to two hours. They then returned to Mrs. Johnson's mother's house and stayed there until 6:30 or 7:00 o'clock that evening, at which time the Johnson family left Crowley to return to Laccasine. While on this trip home, the child, Marcus, vomited from one to three times, depending upon whose testimony is to be believed.
Upon reaching their home, the Johnsons prepared a meal for their children, and then all of their children were put to bed, but Marcus did not appear to be sleepy and wanted to play. He was allowed to stay up for a while, and when it became apparent that he was not going to sleep, they tried rocking him. About 1:30 a. m., Mr. and Mrs. Johnson began to notice that the child seemed nervous, had trouble breathing, and appeared to be suffering from hallucinations. It was decided that the child should be examined by a physician, and Mr. Johnson took Marcus to the Welsh General Hospital for that purpose. Mr. Johnson arrived at the hospital at approximately 2:00 a. m., on the morning of October 24, 1965. This was some nineteen hours after the child had been discovered with the aspirin.
Upon his arrival with the child at the hospital, Mr. Johnson was met by two nurses' aides employed by the hospital, Charlene Augustine Ardoin and Linda Landry Ewing. These ladies were two of the three nurses' aides on duty at the hospital that night. They interviewed Mr. Johnson and obtained a medical history from him concerning the child. This medical history as given by Mr. Johnson, indicated that the child had been nervous, unable to sleep, and that he had vomited prior to his arrival at the hospital. After one of the nurses' aides had completed the taking of the medical history, it was related to them by Mr. Johnson of the aspirin episode and of the possibility that the child had taken from three to six aspirin, some nineteen hours before. The nurses' aide, Charlene Augustine Ardoin, then told Mr. Johnson to tell the doctor about the possible ingestion of aspirin, but nothing was put in the medical history.
Upon Mr. Johnson's request, the nurses' aides called Dr. John G. McClure, defendant herein. Mr. Johnson testified that he told, according to the instruction of the nurses' aides, Dr. McClure about the aspirin episode, but it was Dr. McClure's emphatic testimony that Mr. Johnson told him nothing of the possible ingestion of aspirin. In fact, Dr. McClure testified *527 that he specifically asked Mr. Johnson whether the child had had any aspirin, cough syrup, or any other medication before he was brought to the hospital, and that Mr. Johnson stated that the child had not.
Dr. McClure proceeded to obtain the child's medical history from Mr. Johnson. With this history, the doctor conducted a thorough general examination. He checked the feet, ankles, legs, stomach, chest, throat, nose, ears, all from the front and back. The doctor found the child lively and normal at all times. Marcus laughed and reacted promptly and properly to the request that he open his mouth for the throat examination. There was no rash and no tenderness of the stomach. The heart beat was rapid and the respiration rate was high, with the temperature at 100.6, but the lungs were clear with no rattles. The child was not in shock, the skin was normal, but the face was flushed. The throat was a little red, with the ears normal. Because of the negative answers to the specific questions concerning aspirin and cough medicine and the clinical examination and history given by Mr. Johnson, it was Dr. McClure's opinion that it was a typical case of croup, the diagnosis being upper respiratory infection with laryngitis. On his diagnosis, the doctor prescribed three shots, one each of penicillin, dramamine, and dynathone. None of these shots contained salicylate, and the three were administered by Mrs. Ardoin, nurses' aid, who was in charge of the 11:00 p. m. to 7:00 a. m. shift at the hospital.
After the examination and treatment Dr. McClure advised Mr. Johnson to take the child home, but if trouble persisted to bring him back.
Mr. Johnson returned to his home and put the child to bed. When Mrs. Johnson woke up the next morning, she noticed that the child was having difficulty breathing. This condition worsened, and she asked her husband to take the child to the Welsh General Hospital. Upon arrival at the hospital, the child was pronounced dead.
The child was examined by Dr. A. C. Broussard, who in turn called Dr. Harold J. Sabatier, Coroner of Jefferson Davis Parish. Dr. Sabatier examined the child, and through a blood test found that the child had twenty-five milligrams percent salicylate or aspirin poison present in his blood at the time of his death. This was a toxic level for this type of poisoning and was noted as the cause of death on the death certificate.
The trial court found that plaintiff failed to prove negligence by any of the defendants, and furthermore, that it was well established by the evidence that the sole and proximate cause of Marcus' death was the negligence of Mr. and Mrs. Johnson. Plaintiffs' suit was dismissed at their costs, from which judgment plaintiffs have prosecuted this appeal.
Plaintiffs allege eleven specifications of error, all of which shall be considered in the discussion to follow. For simplicity in discussion, we shall take each of the defendants and their insurers separately.
HOSPITAL:
Plaintiffs allege that the Welsh General Hospital should be liable to them under two causes of action. First is the alleged lack of qualified personnel in the hospital, and the second is their responsibility for the alleged negligence of their employees.
Plaintiffs make much argument over the facts that when the child was first brought in, there was no registered nurse on duty and in fact, Mrs. Ardoin, who was in charge, was not licensed, but rather was only a nurses' aide. Citing the Rules, Regulations and Minimum Standards Governing Hospitals in the State of Louisiana, the plaintiff alleges that it was negligence on the part of the hospital in not having present a registered nurse at all times. Authority for this is his interpretation of *528 Sections 20, 21, and 22 of said rules and regulations.[1]
We feel that this question can be answered without having to interpret the Rules and Regulations. If we were to admit for the point of argument that the hospital, in some manner, did not comply with these regulations, we then are faced with a question of whether or not the failure to have a registered nurse on duty constituted a proximate cause of the child's death.
In order for negligence consisting of the violation of a statute or ordinance to be actionable, it must be the proximate cause of an injury. Ardoin v. Williams, 108 So.2d 817 (La.App.2d Cir., 1959).
Applying the above law to the facts as established in the record, the conclusion must be reached that a violation, if one was present, would not have been a proximate cause of the child's death. A registered nurse could not have done anymore than what the employees present at the time did, that is, to take a medical history in an attempt to discover what was wrong with the child. It does not take a highly skilled or highly trained person to take a medical history, and in view of the testimony of Dr. McClure, that he relied little on the medical history since he always took his own, it is clear that the absence of a registered nurse was not a proximate cause of the child's death. As to the possible liability of the hospital, because of the acts of its employees, this shall be discussed under the next heading.
NURSES:
Plaintiffs allege negligence on the part of the nurses in not taking a proper medical history, and in their failure to communicate with Dr. McClure.
As to both of these allegations of negligence, we quote with approval the findings of the district court, as follows:
"Mrs. Ardoin was not negligent in administering the hospital affairs on the morning in question. When the father was asked for the history he did not mention the problem with the open aspirin bottle until all the history had been taken and the doctor had been called. His mentioning the fact that the child was found with an open aspirin bottle was made after the history was given and Mrs. Ardoin specifically told him to mention this to the doctor. What is really difficult to understand is why Mr. Johnson would mention the open bottle of aspirin to Mrs. Ardoin and then answer Dr. McClure's question in the negative. It must be emphasized that at the time of trial Mr. Johnson again testified that he again `did not think the child had taken any aspirin'."
LIABILITY OF DOCTOR:
Plaintiffs have alleged three bases upon which they feel negligence of the doctor can be established. First, they allege that the doctor was informed of the possible aspirin ingestion and that he failed to act accordingly. Second, the negligence of the nurses should be charged to him; and third, that even though we assume that he was not told, that he should have suspected the possibility of aspirin ingestion and through proper examination discovered such and acted.
As to the communications between Mr. Johnson and Mr. McClure, the trial court accepted as fact that Dr. McClure was not told of the aspirin episode. This finding of the trial court is well substantiated in the record. It was testified to by Dr. McClure that he had not been told. *529 Dr. Broussard, questioning the plaintiffs on the morning of the death of the child as to whether they had alerted Dr. McClure of the possible aspirin ingestion, said that the plaintiffs told him "No". Further, when Dr. Sabatier was attempting to explain to the parents the cause of the death of their child, Mr. Johnson seemed incapable of accepting the possibility of death by aspirin poisoning in that he believed that the child did not like to take aspirin and that the child had not taken but between three and six aspirin.
In reaching a verdict for the defendant-appellees, the trial court accepted the defendant's version of what happened. The factual determination of a trial court, particularly when based upon an evaluation of the credibility of the opposing witnesses should not be disturbed on appeal unless manifestly erroneous. Lewis v. Liberty Mutual Insurance Co., 215 So.2d 138 (La.App.3d Cir., 1968); Huntsberry v. Millers Mutual Fire Insurance Company, 205 So.2d 617 (La.App.3d Cir., 1967); Johnson v. Wilson, 97 So.2d 674 (La.App. 1st Cir., 1957), and citations therein. Finding no manifest error in its conclusion that Dr. McClure was not told, we adopt the trial court's ruling.
As to the negligence of the nurses, having found the absence of such, there is none to be charged to the doctor.
As a third basis, the plaintiffs allege that Dr. McClure did not conduct a proper examination in that a proper examination would have revealed the possibility of aspirin ingestion whether or not plaintiff would have alerted Dr. McClure of the possibility.
Taking into consideration the qualifications of Dr. McClure, and the expert testimony found in the record, we find no reason to believe that Dr. McClure could have discovered the problem other than by being alerted to its possibility. The doctor testified that had someone called it to his attention, he would have acted differently by administering tests to determine the presence or concentration of the aspirin and would have taken appropriate action to treat same, or at least forwarded the baby to someone who could, and that he did not do so because he was not advised of the possibility.
The courts of this state have had numerous opportunities to denote what is the law in regard to the liability of physicians. One of the cases most noted in recent years is that of Meyer v. St. Paul Mercury Indemnity Company of St. Paul, Minnesota, La.App., 61 So.2d 901 (Orleans App., 1952), affirmed at 225 La. 618, 73 So.2d 781 (1953).
In that case, it was noted that the proper test to be applied is as follows:
"A physician, surgeon, or dentist, according to the jurisprudence of this court and the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment in the application of his skill to the case. Stern v. Lanng, 106 La. 738, 31 So. 303; Roark v. Peters, 162 La. 111, 110 So. 106; Comeaux v. Miles, 9 La.App. 66, 118 So. 786; Freche v. Mary, La.App., 16 So.2d 213; Brashears v. Peak, La. App., 19 So.2d 901; Wells v. McGehee, La.App., 39 So.2d 196. See also 70 C.J.S. Physicians and Surgeons § 41."
Applying the above test to the actions of Dr. McClure, we find him free of negligence in all respects.
We have therefore found a lack of negligence on the part of all of the defendants.
For the foregoing reasons, it is the opinion of this court that the judgment of *530 the lower court reflects no error in law or in fact and for that reason we rule that said judgment in favor of defendants and against plaintiffs Wallace J. Johnson and Anna Louise Breaux Johnson, be affirmed. Costs to be paid by plaintiff-appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
MILLER, J., recused.
NOTES
[1] Chapter II, "Personnel".

"§ 20. There shall be sufficient qualified personnel to properly operate each department of the hospital.
§ 21. The department of nursing shall be under the direction of a registered nurse. There shall be an adequate number of nurses on duty at all times.
§ 22. All non-professional employees performing nursing service functions shall be under the supervision of a registered nurse."